UNITED STATES DISTRICT COURT
FOR THE Northern District of Illinois
Eastern Division

FILED
Feb 4, 2008
FEB 4 2008
MB

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Corey Manuel
    Plaintiff,

v.

Sergeant Lyles, et al.
    Defendant.

Case No.: 1:07-CV-06335
Honorable Ronald A. Guzman

## Motion To Proceed

Now comes the Plaintiff, Corey Manuel, Pro Se, and moves this Honorable Court to proceed with said Complaint. In support of this motion Plaintiff states as follower:

1) Plaintiff Constitutional rights was violated when the above officials abuse of his Position.

2) Private rights and remedies to enforce right based on Civil rights statute, 171 ALR 920.

3) Criminal liability for depriving, or conspiring to deprive, a person of his civil rights, 95 L ed 780.

4) Validity and construction of statutes making conspiracy to deprive or deprivation of constitutional right a federal offense, 162 ALR 1373.

5) Liability in damages under 42 USC § 1985 (formerly 8 USC § 47 for conspiring to deprive a person of his civil rights, 95 L ed 1261.

6). Allegation of facts constituting a deprivation under color of state authority of a right guaranteed by the Fourteenth Amendment satisfies to that extent the requirement of Rev Stat § 1979 (42 USC § 1983), giving a right of action against a person who under color of state law, custom, or usage, subjects another to the deprivation of any rights, privileges, or immunities secured by the Federal Constitution.

7). Rev Stats § 1979 (42 USC § 1983) gives a remedy-action at law, suit in equity, or other proper proceeding for redress- to parties deprived of constitutional rights, privileges, and immunities by an official's abuse of his position.

8). A cause of action under Rev Stat § 1979 (42 USC § 1983), giving a right of action against a person who, under color of state law, custom, or usuage, subject another to the deprivation of any right, privileges, or immunties secured by the Federal Constitution, is stated by a complaint in an action against police officers in which it is alleged that these officers abuse plaintiff of their position.

9). This case presents important questions concering the construction of RS § 1979, 42 USC § 1983, which reads as follows:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subject, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

10). Its purpose is plain from the title of the legislation, "An Act to enforce the Provisions of the Fourteenth Amendment to the constitution of the United States, and for other Purposes." 17 Stat. 13. Allegation of facts constituting a deprivation under color of state authority of a right guaranteed by the Fourteenth Amendment satisfies to that extent the requirement of RS § 1979. See Douglas v Jeannette, 319 US 157, 161, 162, 87 L ed 1324, 1327, 1328, 63 S ct 877, 882 So far petitioners are on solid ground.

11). There can be no doubt at least since Ex parte Virginia, 100 US 339, 346, 347, 25 L ed 676, 679, that Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a state and represent it in some capacity, whether they act in accordance with their authority or misuse it. See Home Tel. & Tel. Co. v Los Angeles, 227 US 278, 287-296, 57 L ed 510, 515-518, 33 S ct 312. The question with which we now deal is the narrower one of whether Congress, in enacting §1979, meant to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his

position. Cf. Williams v Untied States, 341 US 97, 95 L ed 774, 71 S ct 576; Screws v Untied States, 325 US 91, 89 L ed 1495, 65 S ct 1031, 162 ALR 1330; United states v classic, 313 US 299, 85 L ed 1368, 61 S ct 1031. We conclude that it did so intend. It is argued that "under color of" enumerated state authority excludes acts of an offical or policeman who can show no authority under state law, state custom, or state usage to do what they did. In this case it is said that these policeman, abuse their position and violated the Constitution and laws of Illinois. It is pointed out that under Illinois law a simple remedy is offered for violation and that, so far as it appears, the courts of Illinois are available to give petitioners that full redress which the common law affords for violence done to a person; and it is earnestly argued that no "statute, ordinace, regulation, custom or usage" of Illinois bars that redress.

12) It was precisely that breadth of the remedy which the opposition emphasized. Referring to the Section involved in the present litigation said: "This section gives to any person who may have been injured in any of his rights, privileges, or immunties of person or property, a civil action for damages against the wrongdoer. The offenses commited against him may be the common violations of the municipals law of his state. It may give rise to numerous

vexations and outrageous prosecutions, inspired by mere mercenary considerations, prosecuted in a spirit of plunder, aided by the crimes of perjury and subornation of perjury, more reckless and dangerous to society than the alleged offenses out of which the cause of action my have arisen.

13) "It authorizes any person who is deprived of any right, privilege, or immunity secured to him by the Constitution of the United States, to bring an action against the wrongdoer in the federal Courts, and that without any limit whatsoever as to the amount in controversy. the deprivation may be of the slightest conceivable character, the damages in the estimation of any sensible man may not be five dollars or even five cents; they may be what lawyers call merely nominal damages and yet by this section jurisdiction of that civil action.

14). Much is made of the history of § 2 of the proposed legislation. As introduced § 2 was very broad. "... If two or more persons shall, within the limits of any state, band, conspire, or combine together to do any act in violation of the rights, privileges, or immunities of any person, to which he is entitled under the Constitution and laws of the United States, which, committed within a place under the sole and exclusive jurisdiction of the United States, would, under any law of the United States then

in force, consitute the crime of either murder, manslaughter, mayhem, robbery, assault and battery, perjury subornation of perjury. criminal obstruction of legal process or resistance of officers in discharge of official duty, arson, or larceny; and if one or more of the parties to said conspiracy or combination shall do any act to effect the object thereof, all the parties to or engaged in said conspiracy or combination, whether principals or accessories, shall be deemed guilty of a felony...." It was this provision that raised the greatest storm. It was §2 that was rewritten so as to be in the main confined to conspiracies to interfere with a federal or state officer <*pg. 502> in the performance of his duties.

15). The words "under color of" law were in the legislation from the beginning to the end. The changes hailed by the opposition—indeed the history of the evolution of §2 much relied upon now—are utterly irrelevant to the problem before us, viz; the meaning of "under color of" law. The vindication of states' rights which was hailed in the amendments to §2 raise no implication as to the construction to be given to "color of any law" in §1. The scope of §1— under any construction—is admittedly narrower than was the scope of the original version of §2. Opponents of the Act however, did not fail to note that by virtue of §1 federal courts would sit in judgment on the misdeeds of the states officers.

Proponents of the Act, on the other hand, were aware of the extension of federal power contemplated by every section of the Act. They found Justification, however, for this extension in considerations such as those advanced: The question is not whether a majority of the people in a majority of the states are likely to be attached to and able to secure their own liberties. The question is not whether the majority of the people in every state are not likely to desire to secure their own rights. It is, whether a majority of the people in every state are sure to be so attached to the principles of civil freedom and civil justice as to be as much desirous of preserving the liberties of others as their own, as to insure that under no temptation of party spirit, under no political excitement, under no jealousy of race or caste, will the majority either in numbers or strength in any state seek to deprive the remainder of the population of their civil rights.

16). We had before us in United States v Classic (US) supra §20 of the Criminal Code, 18 USC §242, which provides a criminal punishment for anyone who "under color of any law, statue, ordinace, regulation, or custum" subjects any inhabitant of a state to the deprivation of "any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States. Accordingly we hold that the motion to dismiss the complaint should not be granted.